DISTRICT OF OREGON
**F I L E D**
September 09, 2019
Clerk, U.S. Bankruptcy Court

Below is an order of the court.

_____
DAVID W. HERCHER
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re<br><br>**Wolfgang Von Hall,**<br>**Susan Marie Hall,**<br><br>　　　　　Debtors. | Chapter 13<br><br>Case No. 18-33116-dwh13 |
| **Washington County Dept. of Housing Services**,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>**Wolfgang Von Hall,**<br>**Susan Marie Hall,**<br><br>　　　　　Defendants. | Adversary Proceeding No. 18-03121-dwh<br><br>MEMORANDUM DECISION ON MOTION FOR SUMMARY JUDGMENT<br><br>NOT FOR PUBLICATION[1] |

---

[1] This disposition is not appropriate for publication, although it may be cited for whatever persuasive value it may have.

Page 1 – MEMORANDUM DECISION ON MOTION FOR SUMMARY JUDGMENT

## I. Introduction

The plaintiff, Washington County Department of Housing Services, moved for summary judgment. For the reasons that follow, I will grant the motion.

## II. Background

Wolfgang Von Hall and Susan Marie Hall filed the underlying chapter 13 case on September 5, 2018.[2] They filed and obtained confirmation of a plan.[3] The department commenced this action on November 19, 2018,[4] seeking a determination that the Halls' debt to the department cannot be discharged. The department moved for summary judgment on July 3, 2019.[5] Because the Halls are no longer represented by a lawyer, I attached a copy of Local Bankruptcy Rule 7056-1 to my order setting response and reply deadlines for the motion.[6] Nevertheless, they neither responded to the motion nor appeared for oral argument.

## III. Analysis

Summary judgment is proper if the movant is entitled to judgment as a matter of law based on facts about which there is no genuine dispute.[7] Because the department as plaintiff has the burden of proof, I can grant summary judgment only if it has presented facts that would warrant judgment as a matter of law if presented and unrebutted at trial.[8]

---

[2] Case no. 18-33116-dwh13, docket item 1.
[3] Case no. 18-33116-dwh13, docket items 2, 16.
[4] Docket item no. (DI) 1.
[5] DI 41.
[6] DI 44.
[7] Fed. R Civ. P. 56(a).
[8] *Rich v. Secretary, Florida Dept. of Corrections*, 716 F.3d 525, 530 (11th Cir. 2013); *see also, e.g., Hotel 71 Mezz Lender LLC v. Nat'l Retirement Fund*, 778 F.3d 593, 601-02 (7th Cir. 2015) (if movant has burden of proof, it must lay out facts supporting the elements of its claim).

### A. *Undisputed facts*

Based on the department's factual materials and the lack of any response, I determine that the following facts are undisputed.

The Halls received benefits as participants in a housing-voucher program administered by the department during 2018.[9] As part of that program, the Halls were required to make annual personal declarations, under penalty of perjury, providing information about their income, assets, and debts.[10] They agreed, and understood they were legally required, to report any changes in their household income immediately and in writing.[11] In January 2018, Wolfgang Hall took a job, where he earned $6,233.50 over the course of several months.[12] They did not immediately report this change to their household income.[13] The delay in reporting caused the department to make an overpayment of $3,738. which the Halls have not repaid.[14] This was the second time since 2015 that they had received an overpayment because of their failure to report a change in their income, though they repaid the overpayment the first time.[15]

From those circumstances and in the absence of any counterevidence, a factfinder could and would find that the Halls were aware of their obligation to report changes to their income, knew that the department would overpay them if they did not report the change, intentionally withheld the information for the purpose of obtaining the overpayment, and did in fact receive benefits at the department's expense to which they were not entitled. A factfinder would also

---

[9] DI 41 (Motion) at PDF 7.
[10] Motion at PDF 7, 14.
[11] Motion at PDF 14.
[12] Motion at PDF 34.
[13] Motion at PDF 34.
[14] Motion at PDF 34.
[15] Motion at PDF 34.

Page 3 – MEMORANDUM DECISION ON MOTION FOR SUMMARY JUDGMENT

find that the department reasonably relied on the Halls to provide accurate and up-to-date information about their income, as they had promised to do.

### B. Legal analysis

Because the facts are not in genuine dispute, I conclude that the department's motion turns entirely on a question of law—whether a judgment of nondischargeability can be based on an omission of information regarding the debtors' financial condition, when the debtors were under a legal obligation to provide that information.

### 1. The writing requirement

Section 523(a)(2) of title 11, U.S. Code, creates an exception to discharge for debts that result from certain kinds of fraudulent or deceptive acts by a debtor. Subdivision (a)(2)(A) bars discharge of debts arising from "false pretenses, a false representation, or actual fraud," but it expressly excludes from its coverage statements respecting the debtor's financial condition. Subdivision (a)(2)(B) pertains to false written statements respecting the debtor's financial condition. The interaction of these two subdivisions means that a false statement respecting the debtor's financial condition can create a nondischargeable debt only if the statement is in writing.[16]

A statement respecting the debtor's financial condition means one that "has a direct relation to or impact on the debtor's overall financial status."[17] A statement about a consumer's household income satisfies this standard because it relates directly to the consumer's overall financial status. I must therefore decide two questions: whether the Halls made a false statement about their income, and, if so, whether it was in writing. The second question is easy to answer. The department does not argue that the Halls made any false statement in writing. The first

---

[16] *Lamar, Archer & Cofrin, LLP v. Appling*, 138 S.Ct. 1752, 1758 (2018).
[17] 138 S.Ct. at 1761.

Page 4 – MEMORANDUM DECISION ON MOTION FOR SUMMARY JUDGMENT

question is more difficult, because the department bases its theory of fraud not on any express statement but on the Halls' failure to report the change to their income.

## 2. The difficulties with distinguishing omissions from statements

The difficulty I confront here, which is identical to the difficulty I discussed in *State of Oregon, Department of Human Services v. Mcharo (In re Mcharo)*,[18] is whether a deceptive omission of information about one's financial condition constitutes a false "statement" respecting financial condition. As I noted in *Mcharo*, the Supreme Court's definition of "statement" in *Lamar, Archer & Cofrin v. Appling*[19] appeared to have been adopted by agreement of the parties rather than being the Court's holding on a disputed question of law.[20] I therefore concluded that the Court probably would not treat that definition as binding, and the question whether a "statement" can include nonverbal communication—as it does, for example, under the Federal Rules of Evidence[21]—remains unresolved.

For a number of reasons, I concluded in *Mcharo* that nonverbal communication, including a conspicuous failure to speak that conveys a false impression, can be a statement for purposes of section 523(a)(2). First, both the common law of fraud and Ninth Circuit law construing section 523(a)(2) have always treated a deceptive omission as a species of misrepresentation,[22] and I saw no reason to distinguish "representations" under the common law from "statements" under the statute.

---

[18] No. 18-06052-dwh, 2018 WL 6886462 (Bankr. D. Or. Dec. 31, 2018).
[19] 138 S.Ct. 1752, 1759 (2018).
[20] 138 S.Ct. 1759 ("There is no dispute as to the meaning of the first two terms [including *statement*]").
[21] Fed. R. Evid. 801(a).
[22] *Citibank (South Dakota), N.A. v. Eashai (In re Eashai)*, 87 F.3d 1082, 1089 (9th Cir. 1996) ("Under common law, a false representation can be established by an omission when there is a duty to disclose") (citing Restatement (Second) of Torts § 551 (1976)).

Page 5 – MEMORANDUM DECISION ON MOTION FOR SUMMARY JUDGMENT

Second, the Court in *Lamar* emphasized the congressional policy that creditors who purport to rely on financial information should do so only if the information is in writing.[23] It would be inconsistent with that policy to interpret the word "statement" in a way that permits creditors to rely on mere silence. If it is improper for creditors to rely on spoken statements about a debtor's finances, it is even more improper for them to rely on silence.

Third, and relatedly, it seems perverse to treat debtors who affirmatively lie to their creditors (albeit not in writing) more leniently than those who only withhold information. The department's lawyer acknowledged this "conundrum" at oral argument and conceded that, if the Halls had telephoned the department and made an oral statement that their income had not changed, this unwritten statement could not support a nondischargeable debt. I commented in *Mcharo* on the absurdity of concluding that the debtor "could have protected himself by actively lying about his new job rather than staying silent."[24]

Finally, I pointed out that every affirmative false statement is necessarily accompanied by an omission:[25] when one tells a lie, one simultaneously omits to tell the truth. For example, the creditor in *Lamar* lost because the debtor had made a false statement about his ownership of an asset, but the statement was not in writing.[26] Could the creditor have obtained a different result by ignoring the affirmative false statement and instead focusing on the debtor's failure to disclose true information about his (non)ownership of the asset?

---

[23] *Lamar*, 138 S.Ct. at 1757-58.
[24] *Mcharo*, 2018 WL 6886462 at *3.
[25] *Id.*
[26] *Lamar*, 138 S.Ct. at 1757-58.

Page 6 – MEMORANDUM DECISION ON MOTION FOR SUMMARY JUDGMENT

For all of those reasons, I concluded that the only sensible approach was to interpret the word "statement" broadly to include all forms of communication. The department offers two arguments to show that my conclusion in *Mcharo* was wrong.

### 3. *Lamar*'s footnote 4

The department first points to footnote 4 of the *Lamar* opinion. In response to Lamar's argument that "statement respecting . . . financial condition" should be defined narrowly so as not to swallow up the general rule of nondischargeability for fraud-based debts, the Supreme Court pointed out that "[s]ection 523(a)(2)(A) has been applied when a debt arises from 'forms of fraud, like fraudulent conveyance schemes, that can be effected without a false representation.'"[27] The quoted language was from the Court's 2016 *Husky Intern. Electronics, Inc. v. Ritz*[28] opinion. This citation was followed by footnote 4:

> *See also*, *e.g.*, *In re Tucker*, 539 B.R. 861, 868 (Bkrtcy.Ct.D.Idaho 2015) (holding nondischargeable under § 523(a)(2)(A) a debt arising from the overpayment of social security disability benefits to an individual who failed to report changes to his employment despite a legal duty to do so); *In re Drummond*, 530 B.R. 707, 710, and n. 3 (Bkrtcy.Ct.E.D.Ark.2015) (same, and concluding that "the requirement of the debtor to notify [the Social Security Administration] if she returns to work is not a statement that respects the debtor's financial condition").[29]

The cited *Tucker* decision was decided under pre-*Lamar* Ninth Circuit law that defined "statement respecting financial condition" narrowly,[30] so it did not have to address whether an omission was a statement But the *Drummond* decision did address it and held that an omission is

---

[27] *Lamar*, 138 S.Ct. at 1763.
[28] 136 S.Ct. 1581, 1586 (2016).
[29] *Lamar*, 138 S.Ct. at 1763 n.4.
[30] *See Eugene Parks Law Corp. Defined Benefit Pension Plan v. Kirsh (In re Kirsh)*, 973 F.2d 1454, 1457 (9th Cir. 1992) (statement was not respecting financial condition because it "did not purport to set forth the debtors' net worth or overall financial condition"); *Barnes v. Belice (In re Belice)*, 461 B.R. 564, 574 (9th Cir. B.A.P. 2011) (*Kirsh* required a "strict interpretation" of the term "financial condition").

not a statement.[31] *Drummond* is materially indistinguishable from this case. The department admits that footnote 4 "may be dicta,"[32] and I have trouble understanding its significance. The Court did not expressly adopt *Drummond*'s holding, and it may merely have been using it as an example of a case in which section 523(a)(2)(A) "has been applied"—rightly or wrongly—to a fraudulent omission. Still, I doubt that the Court would have cited *Drummond* if it did not mean to approve of the quoted holding. Even if it is a dictum, the Ninth Circuit has warned that Supreme Court dicta should be respected as "a prophecy of what that Court might hold."[33]

### 4. Fraud by conduct

Second, the department points out that the Court held in *Husky* that there can be fraud under section 523(a)(2) without a representation.[34] In *Mcharo*, I focused on pre-*Husky* decisions that treated deceptive silence as a species of misrepresentation.[35] But those decisions came at a time when courts assumed that misrepresentations were an indispensable element of fraud under section 523(a)(2).[36] Perhaps *Husky* demands a reappraisal of those decisions. Perhaps deceptive silence is not a form of misrepresentation but rather a form of fraud by conduct. That the Supreme Court cited *Tucker* and *Drummond*, both of which were benefit-overpayment cases involving fraudulent omissions, immediately after discussing *Husky* implies that the Court indeed views deceptive silence as conduct rather than a misrepresentation.

---

[31] *In re Drummond*, 530 B.R. 707, 710 n.3 (Bankr. E.D. Ark. 2015).
[32] Plaintiff's Brief in Support of Motion for Summary Judgment (Brief) at 14.
[33] *McCalla v. Royal MacCabees Life Ins. Co.*, 369 F.3d 1128, 1131 (9th Cir. 2004) (internal quotation marks omitted).
[34] Brief at 14.
[35] *Eashai*, 87 F.3d at 1088-89 (9th Cir. 1996); *Britton v. Price (In re Britton)*, 950 F.2d 602, 604 (9th Cir. 1991); *Cooke v. Howarter (In re Howarter)*, 114 B.R. 682, 684 n.2 (9th Cir. B.A.P. 1990) (concealment of fact "constitutes a misrepresentation").
[36] *Eashai*, 87 F.3d at 1086 (first element of fraud is "[that] the debtor made the representations"); *see also*, *e.g.*, *Ghomeshi v. Sabban (In re Sabban)*, 600 F.3d 1219, 1222 (9th Cir. 2010) (first element is "the debtor made . . . representations").

Page 8 – MEMORANDUM DECISION ON MOTION FOR SUMMARY JUDGMENT

Case 18-03121-dwh    Doc 49    Filed 09/09/19

### 5. Addressing the conceptual difficulties noted in *Mcharo*

Footnote 4 and the concept of fraud by conduct, two issues that I did not address in *Mcharo*, lead me to reconsider the view I adopted there. I now return to the conceptual difficulties I mentioned in that decision to see whether I can reconcile them with the Court's apparent espousal of the position that I previously considered implausible.

First, because *Husky* eliminated the need to tie fraud to misrepresentations, the apparent equivalence between common-law "representations" and statutory "statements" is no longer important. I can regard silence as neither a representation nor a statement, but as conduct.

Second, as to the policy of requiring creditors to rely only on written financial information, viewing silence as conduct probably does not interfere with that policy to an unacceptable degree. It is important to remember that not all silence is fraudulent. Debtors do not automatically have an obligation to furnish financial information to creditors or potential creditors, such that their failure to do so is fraud. If a creditor asks for financial information, and the debtor sits silently and gives neither a written nor an oral response, the creditor probably would not be justified in relying on the debtor's silence as if it were an answer, so the creditor's claim would fail on grounds other than the lack of a writing.[37] In a case such as this one, where the debtor's silence is fraudulent only because of a previous *written* promise to provide updated information, the danger of improper reliance by the creditor is slight.

Third, as to the seeming absurdity of treating liars more leniently than mere withholders of information, the department acknowledged that this is a "conundrum." Yet it becomes less absurd if we focus on the remedial rather than punitive aspect of section 523(a)(2)(A). Debtors who lie may be more culpable than debtors who withhold information, but it does not necessarily

---

[37] *See Field v. Mans*, 516 U.S. 59, 73 (1995) (creditor must show justifiable reliance).

follow that the victims of liars are in greater need of protection, and protecting victims is the purpose of section 523(a)(2).[38] Similarly, the writing requirement is designed not to make it easier for lying debtors to get away with it but to "balance the potential misuse of [financial] statements by both debtors and creditors."[39] Lenders who base their lending decisions on the debtor's finances can protect themselves by getting that information in writing.[40] But government agencies that provide benefits are different from lenders in that they do not intentionally enter into a debtor-creditor relationship with their applicants;[41] they become creditors only when the applicant becomes disqualified for the benefits and fails to disclose that fact. These agencies have little practical choice but to depend on their applicants to provide accurate information.[42] Requiring daily written reports that there has been no change in the applicant's financial condition is not realistic. Outside of the benefit-overpayment context, it could be more difficult for a creditor to establish that it was entitled to make assumptions about the debtor's financial condition such that the debtor's silence is fraudulent.

Finally, I turn to the problem of circumventing *Lamar* by pleading a false-statement claim as a fraud-by-silence claim instead. The concern was that a creditor who had relied on an oral false statement about financial condition could escape the writing requirement by proving that the debtor, after making an oral false statement, had subsequently failed to correct it, and the creditor relied on this silence as well as on the initial false statement. But if an omission is fraudulent only because of an earlier false statement, the omission would probably be deemed to merge with the false statement rather than constituting a second act of fraud. The writing

---

[38] *Muegler v. Bening*, 413 F.3d 980, 983 (9th Cir. 2005).
[39] *Lamar*, 138 S.Ct. at 1763.
[40] 138 S.Ct. at 1764.
[41] *Maxwell v. State of Oregon (In re Maxwell)*, 600 B.R. 62, 71 (9th Cir. B.A.P. 2019).
[42] 600 B.R. at 71.

Page 10 – MEMORANDUM DECISION ON MOTION FOR SUMMARY JUDGMENT

requirement then would apply to the original false statement and could not be circumvented by purporting to rely on the omission instead.

### 6. Application

Based on *Husky* and *Lamar*'s footnote 4, I conclude that the Halls' failure to report a change in their income despite their earlier promise to do so is a deceptive omission but not a statement. There is no genuine dispute that the Halls made that deceptive omission with intent to deceive the department, that the omission was material, that the department justifiably relied on the Halls to provide accurate information, and that their debt to the department was the result of their deceptive omission. The department is thus entitled to judgment as a matter of law.

## IV. Conclusion

I will grant the department's motion for summary judgment and enter judgment determining that the Halls' debt to the department is excepted from discharge.